# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PAMELA L. MCKISSICK, an individual, | ) ) | |
| Plaintiff, | ) ) | |
| V. | ) ) | 04-CV-262-JHP-SAJ |
| GEMSTAR-TV GUIDE INTERNATIONAL, INC., HENRY C. YUEN, an individual; and ELSIE M. LEUNG, an individual, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER:**

Now before the Court is the Defendants', Henry C. Yuen and Elsie M. Leung, Motion to Dismiss [docket number 32], the Plaintiff's, Pamela McKissick, response, and the Defendants' reply. For the reasons stated herein, the Defendants' motion is hereby GRANTED in part and DENIED in part.

**BACKGROUND:**

This case stems from alleged misrepresentations that were made during the merger of TV Guide, Inc. ("TV Guide") and Gemstar International Group Limited ("Gemstar"). As a result of the merger, TV Guide was to become a wholly-owned subsidiary of Gemstar. Each of the TV guide shareholders were to receive a fractional share of the Gemstar stock in exchange for the TV Guide stock they had held. Moreover, any people who held stock options for purchase of TV Guide stock were granted stock options in Gemstar at the same fractional share given current

1

shareholders.

The Plaintiff, Pamela McKissick, was the President and Chief Operating Officer of the TV Guide Channel, a subsidiary of TV Guide. During her time with TV Guide and its subsidiaries, the Plaintiff was awarded a number of stock options for purchase of TV Guide stock. She remained in the position of President and Chief Operating Officer of a Gemstar subsidiary after the merger of Gemstar and TV Guide in 2000. In 2003, the Plaintiff left her position with Gemstar and signed a release agreement at that time.

The Defendants, Henry C. Yuen ("Yuen") and Elsie M. Leung ("Leung"), were officers in Gemstar at the time of the negotiations and later merger of TV Guide and Gemstar. Yuen served as the Chairman, Chief Executive Officer, and Director of Gemstar during the relevant period. At the same time, Leung served as the Chief Financial Officer and a Director of Gemstar.

During the merger of TV Guide with Gemstar, the Plaintiff claims that she had planned to exercise her stock options with TV Guide, but eventually held them as a result of misrepresentations that were made to her during the merger. Instead, the Plaintiff's TV Guide stock options were converted into Gemstar stock options at the time of the merger. Shortly thereafter, the value of Gemstar stock, and her stock options, decreased dramatically, causing her a significant loss.

Shortly after she left Gemstar, the Plaintiff filed this action claiming that the Defendants had violated the Securities and Exchange Act, committed common law fraud, and negligent misrepresentations during the merger. Specifically, the Plaintiff alleges that the Defendants fraudulently induced her to hold her stock options during the merger. The statements made by

Yuen and acquiesced to by Leung, which the Plaintiff claims fraudulently induced her to hold her stock options, were as follows:

> (3) the financial health and future prospects of the company were strong, (4) Yuen and Leung were a knowledgeable and experienced management team who knew how to make the merged company a huge success, (5) Yuen and Leung valued each of the business units, including Plaintiff's, and they needed each executive, including Plaintiff, to stay with the company, (6) if the employees would just give them three years, stay with the company and hold onto their stock, they could retire on the beach, because (7) he had never failed to at least triple, even quadruple, the stock of companies he had acquired.

*See* Complaint at ¶¶ 14, 15.  The Plaintiff claims that each of these statements was false, and that she relied upon them in choosing to hold her stock options at the time of the merger.

The Defendants, Yuen and Leung, have now moved to dismiss the claim because the cause of action is barred by the separation and release agreement, the common law fraud was not plead with sufficient particularity, and the cause of action under the Securities and Exchange Act fails as a matter of law.  The motion has been fully briefed and is now ready for review.

**DISCUSSION:**

*A. Separation and Release Agreement:*

The Defendant's first argument in support of dismissal is that the Separation and Release agreement entered into between the Plaintiff and Gemstar at the time of her resignation from the company bars any suit, including the matter now before the Court.  The Defendants cite to paragraph 6 of that agreement which provides a general release of all possible actions against Gemstar and any of its officers.  The Defendants argue that since each of them are officers of Gemstar that the release necessarily removes them from any liability.

In response, the Plaintiff argues that the enforceability of the Release Agreement is at

issue in this case and discovery must be conducted in order to fully respond to the argument in Defendant's motion. Specifically, the "Plaintiff requests leave and sufficient time to conduct further discovery in further support of her challenge to the enforceability of the Agreement." *See* Plaintiff's Response to Mtn. to Dismiss at 13. Because the enforceability of the Release Agreement has been called into question, a matter which goes beyond the pleadings, the motion to dismiss must be treated as a motion for summary judgment as to this issue. Acknowledging that the motion was in fact one for summary judgment, the Plaintiff is seeking relief under Rule 56(f) to complete discovery. In support of the Rule 56(f) request, the Plaintiff properly attaches an affidavit outlining the need for discovery.

The Court first addresses the Plaintiff's continuing reference to her Response to Gemstar's Motion for Summary Judgment and her Motion for Reconsideration of the Summary Judgment. The Plaintiff suggests that the Court ruled on that motion prematurely because adequate discovery had not been conducted by the parties prior to the Court's ruling. In the first motion, however, the Plaintiff made no request for discovery before responding to the motion. In fact, the Plaintiff's only mention of enforceability problems with regard to the Release Agreement can be found in footnote one of the Plaintiff's response. Such an effort on the part of the Plaintiff was wholly inadequate for this Court to grant Rule 56(f) relief prior to ruling on the motion.

Because the Plaintiff has properly requested Rule 56(f) relief in this motion, however, and because the enforceability of the Release Agreement is of utmost importance to the future of this cause of action, the Plaintiff's request is granted and the Defendant's motion for summary judgment as to this issue is denied.

*B. The Securities and Exchange Act:*

The Defendants next argue that the cause of action alleged under the Securities and Exchange Act should fail as a matter of law because the Plaintiff lacks standing to assert that claim. The Plaintiff's cause of action under the Securities and Exchange Act falls under Rule 10(b) of the act, codified at 15 U.S.C. § 78j, and Section 20(a) of the act, codified at 15 U.S.C. § 78t(a), which places liability on individual officers of companies.[1] Rule 10(b) makes it unlawful for any person

> [t]o use or employ, in connection with the *purchase or sale* of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (emphasis added). In furtherance of that law, the Securities and Exchange Commission subsequently enacted a regulation to more specifically outline the violation. *See* 17 C.F.R. § 240.10b-5. That regulation makes it

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange
>
> (a) To employ any device, scheme or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

---

[1] Because the Plaintiff must meet the standing requirements under 10(b) and Rule 10b-5 for the Section 20(a) claim to prevail, the Court need only address the general standing requirements of the law.

> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

*Id.*  To have standing under Rule 10b-5, the plaintiff alleging a private right of action must be an actual purchaser or seller of securities.  *See Blue Chip Stamps*, 421 U.S. at 730 (*citing Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952)).  This standard has been labeled the *Birnbaum* Rule after the Second Circuit decision which first found that a purchase or sale was required for a Rule 10b-5 private cause of action.  *See id.*

In this case, the Plaintiff does not allege that she actually purchased or sold any stock at the time of the merger.  Rather, her assertion is that she had the contractual right to purchase or sell stock that was not exercised due to the alleged misrepresentations by the Defendants.  Congress, in enacting the Securities and Exchange Act, provided definitions to help in the interpretation and application of the statutes.  *See* 15 U.S.C. § 78c.  But, as the Supreme Court has stated, "The relevant definitional sections of the 1934 Act are for the most part unhelpful; they only declare generally that the terms 'purchase' and 'sale' shall include contracts to purchase or sell."  *SEC v. Natl Sec., Inc.*, 393 U.S. 453, 466 (1969).  Thus, the Court must look to other courts to discern the boundaries for standing under a Rule 10b-5 cause of action to determine if the holding of stock options by the Plaintiff constitutes a contract to purchase or sell stocks.

Plaintiff argues that the facts underlying this cause of action constitute an actual purchase or sale for two reasons.  The Plaintiff's first argument relies on language in the Supreme Court's decision in the *Blue Chip Stamps* case where the Court stated that "the holders of puts, calls, options, and other contractual rights or duties to purchase or sell securities have been recognized

6

as 'purchasers' or 'sellers' of securities for purposes of Rule 10b-5." The Plaintiff's second argument suggests that since the merger resulted in an exchange of TV Guide stock for Gemstar stock, that the mere exchange of the stock adequately qualifies under the purchase or sell language of the Rule. As discussed below, neither of these arguments are persuasive.

With regard to the Plaintiff's first argument that the Supreme Court specifically mentioned option holders as being purchasers or sellers under the Rule 10b-5, the Court notes that the Supreme Court's language in the *Blue Chip Stamps* decision was nothing more than dicta that alone cannot serve as the basis for standing under 10(b) or Rule 10b-5. Furthermore, the Court has not found, nor have the parties cited, any caselaw or statutory language to support applying the *Blue Chip Stamps* dicta to the case at hand. To allow the Plaintiff, who simply held her stock options, to qualify as a purchaser or seller of stock under Rule 10b-5 under these facts would destroy the Supreme Court's reasoning for adopting the *Birnbaum* Rule. As the Court stated, "In the absence of the Birnbaum doctrine, bystanders to the securities marketing process could await developments on the sidelines without risk." *Blue Chip Stamps*, 421 U.S. at 747. Here, the Plaintiff is exactly the person described by the Court, a "bystander to the securities market[ ]." *Id.* Moreover, as the Fifth Circuit has noted, "It is well established that mere retention of securities in reliance on material misrepresentations or omissions does not form the basis for a § 10(b) or Rule 10b-5 claim." *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1443 n. 7 (5th Cir. 1993) (citing *Blue Chip Stamps*, 421 U.S. 723).

With regard to the Plaintiff's second argument, that the merger of the two companies resulted in an exchange of stock which constitutes a purchase or sale, the Court does not agree with Plaintiff's analysis. In support of her contention, the Plaintiff cites to the Tenth Circuit

Decision in *Realmonte v. Reeves*, 169 F.3d 1280 (10th Cir. 1999). In that decision, the Court noted that the exchange of one security for another qualified as a purchase or sell under the rules. *Id.* at 1285. The Court further stated, "When an exchange of shares facilitates the merger of two separate and distinct corporate entities, that exchange constitutes a 'purchase or sale' for purposes of bringing a Rule 10b-5 action." *Id.* (citing *National Securities*, 393 U.S. at 467). In both the *Realmonte* case and the *National Securities* case, however, the factual situation is significantly different from that presented here.

In *Realmonte*, the Plaintiffs were actual shareholders in the former company who were in the position to approve the merger. 169 F.3d at 1282-83 ("The Realmontes assert that Reeves and Coopers & Lybrand did not disclose Skolnicks' true financial picture, and had they done so, the Realmontes would not have agreed to the merger."). Furthermore, the court stated that the Realmontes' decision to approve the merger was analagous to a "typical cash sale or share exchange." *Id.* at 1285. Here, the facts do not resemble a cash sale in any sense. Plaintiffs in the *Realmonte* case were required to make an affirmative decision to complete the exchange of stock for the two companies to merge; without their approval of the merger it would not have occurred and two separate companies would have still been in operation. The plaintiffs in that case suggested that they would not have approved the merger but for the misrepresentations that were made. The Plaintiff in this case did not make any affirmative decision to approve the merger. In fact, the Complaint is devoid of any averments suggesting that the Plaintiff was similarly situated to the Realmontes. Instead, the Plaintiff claims that due to the misrepresentations she simply decided not to exercise her options at the time of the merger.

Likewise, the Supreme Court in the *National Securities* case was dealing with a situation

where the shareholders of one company had to approve its merger with another company. 393 U.S. at 467 ("Producers' shareholders were misled in various material respects prior to the their approval of the merger."). Again, the present case is lacking that affirmative decision of the Plaintiff to approve the merger that is critical for her to satisfy the purchasing or selling requirement of the law. Also important in the *National Securities* case is the Supreme Court's notation that:

> This case presents none of the complications which may arise in determining who, if anyone, may bring private actions under s 10(b) and Rule 10b-5. . . . This is a suit brought by the Commission; the terms 'purchase and sale' are relevant only to the question of statutory coverage. Therefore there are no 'standing' problems lurking in this case.

*Id.* at 468 n. 9.

Therefore, the Court finds that under the facts presented in this case, the Plaintiff does not establish the necessary standing requirement that she was an actual purchaser or seller of stock to pursue a 10(b) or Rule 10b-5 cause of action. The Court does not, however, wish to suggest that a holder of stock options may never satisfy the standing requirements. The Court finds that if the Plaintiff had made an affirmative decision to approve the merger, the standing requirement would have been satisfied. *See, e.g., id.* at 467; *Realmonte*, 169 F.3d at 1285. Moreover, if the Plaintiff had relied on the alleged misrepresentations of the Defendant to accept stock options in lieu of increased salary or other forms of compensation, then she likely would have met the standing requirement. *See, e.g., Yoder v. Orthomolecular Nutrition*, 751 F.2d 555, 560 (2d Cir. 1985). However, none of those special circumstances are present here; instead, the Plaintiff here is nothing more than a "bystander to the securities market[ ]." *Krim*, 989 F.2d at 1443 n. 7.

*C. Federal Rule of Civil Procedure 9(b):*

The Defendants' third argument for dismissal rests on their assertion that the Plaintiff failed to plead the fraud causes of action with the specificity envisioned and required by Rule 9(b).[2] Federal Rule of Civil Procedure 9(b) mandates, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." However, "[t]he requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, and direct, . . . and to be construed to do substantial justice." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting Fed. R. Civ. Pro. 8). The prevailing purpose of the specificity requirement in Rule 9(b) is "to afford defendant fair notice of plaintiff's claims and the factual background upon which it is based." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992). "Simply stated, a complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz*, 124 F.3d at 1252.

In this case, the Plaintiff has certainly satisfied the requirements of Rule 9(b). In paragraph 13 of the Plaintiff's Complaint, the Plaintiff avers, "During the week of January 17th, 2000, defendants Yuen and Leung traveled to Tulsa, Oklahoma for a meeting with the senior executives of TV Guide, including Plaintiff . . . ." *See* Complaint at ¶ 13. This paragraph

---

[2] Because the Court has determined the Plaintiff does not have standing to raise a 10(b) or Rule 10b-5 claim, the analysis here will be limited to the state law causes of action.

certainly provides the time and place of the alleged misrepresentations. Again, in paragraph 15, the Plaintiff clearly satisfies the time and place requirement when she avers that the Defendants "[a]t a subsequent 'client event' held in Aspen, Colorado on or about March 4, 2000, at a dinner where senior executives, including Plaintiff were present, Yuen and Leung again urged employees not to sell any stock and reiterated [the alleged misrepresentations]." *Id.* at ¶ 15. Likewise, the Plaintiff's Complaint satisfies the 9(b) requirement of setting forth the content of the alleged misrepresentations. In paragraph 14 of the Complaint the Plaintiff specifically outlines five alleged misstatements of the Defendants that influenced her decisions.[3] Looking at the Complaint as a whole under the requirements of Rule 9(b) leads the Court to find that the specificity requirements are adequately plead and the Defendants are certainly on notice of the allegations brought against each of them.

*D. Lack of Causation:*

The Defendants' final argument for dismissing this case relies on the contention that the Plaintiff has failed to allege a causal connection between the Defendants' action and her injury. The Plaintiff states in her complaint, "As a direct result of defendants' misstatements and failure to disclose as alleged above, Plaintiff suffered substantial loss of the entire value of her options and the underlying stock." *Id.* at ¶ 20. While the Court acknowledges that the computation of damages may be speculative, the Complaint on its face is adequate to survive the causation requirement.

## **CONCLUSION:**

Therefore, the Defendants' Motion to Dismiss is granted in part and denied in part. The

---

[3] See the background section above for the alleged misstatements.

11

Defendant's reliance on the Separation and Release Agreement for dismissal is denied as the Plaintiff has properly requested relief pursuant to Rule 56(f) to conduct discovery. The Defendants' motion with respect to the Securities and Exchange Act is granted as the Court finds the Plaintiff was not a purchaser or seller as required by the Act and its Rules. Finally, the Court finds that the Defendants' basis for dismissal pursuant to Rule 9(b) and for failure to properly show causation is denied, as the Plaintiff has sufficiently plead her cause of action. Thus, the remaining causes of action in this case consist of the state law causes of action for "Fraud and Deceit" and "Negligent Misrepresentation."

IT IS SO ORDERED this 26th day of August 2005.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma