IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PAMELA MCKISSICK, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 04-CV-262-JHP-SAJ |
| GEMSTAR-TV GUIDE INTERNATIONAL, INC., HENRY C. YUEN, an individual; and ELSIE M. LEUNG, an individual. | ) ) ) ) ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court are Defendants Henery C. Yuen and Elsie M. Leung's two Motions for Attorney Fees [Docket Nos. 300, 301]; Plaintiff Pamela McKissick's Combined Response in Opposition [Docket No. 323]; and Defendants' combined Reply [Docket No. 324]. For the reasons set forth below, Defendants' Motions for Attorney Fees are GRANTED.

## BACKGROUND

The facts and procedural history of the this case are set out in greater detail in the Court's Orders granting summary judgment in favor of Defendant Gemstar-TV Guide International, Inc. ("Gemstar") [Docket No.36] and Defendants Henery C. Yuen and Elsie M. Leung ("Individual Defendants") [Docket No.293]. Until August 1, 2003, Pamela McKissick was an at-will employee at TV Guide Networks Inc., ("TV Guide") a wholly owned subsidiary of Gemstar. On August 2, 2003, McKissick signed a Seperation and Release ("SAR") with TV Guide and all of its affiliated entities. Pursuant to the SAR, McKissick recived a cash payment of $425,000 plus

1

other valuable consideration. As consideration for the severance payments, McKissick released a defined group of "Released Parties" from all claims up to the date of the execution of the SAR. Included in the SAR is a "No Actions" clause, in which McKissick agreed that she will not bring any lawsuits against the company. Further, McKissick agreed that if she did file such a lawsuit in violation of the SAR, she will pay the cost and expenses, including attorney fees, of defending the lawsuit. This provision extended to the "Company and/or related persons."

In violation of the SAR, McKissick brought an action against Gemstar and the Individual Defendants. In response to McKissick's suit, Gemstar filed a counterclaim, but the Individual Defendants did not. On September 22, 2004, the Court granted Gemstar's Motion for Summary Judgment on McKissick's claims finding they were barred by the SAR [Docket No. 36]. The Court also granted Gemstar's Motion for Summary Judgment on its Counterclaim against McKissick, finding she breached the "No Actions" clause of the SAR [Docket No. 123]. On September 18, 2008, the Court granted the Individual Defendants' Motion for Summary Judgment [Docket No. 293] finding that Defendants were "Released Parties" and, as such, the SAR barred McKissick's claims against them as well.

On October 20, 2008, the Individual Defendants filed two separate Motions for Attorney Fees pursuant to Fed. R. Civ. P. 54(d)(2) [Docket Nos. 300, 301]. One motion requests an award of attorney fees paid to the firm of Feldman, Franden, Woodard & Farris ("FFWF") in the amount $20,499.10. The other motion requests an award of attorney fees paid to the firm of Frankfurt, Kurnit, Klein & Selz, P.C., ("FKKS") who was substituted as lead counsel in July 2006, in the amount of $235, 892.19. Both motions claim entitlement to attorney fees based on the provisions of the SAR. McKissick advances three arguments for denying the motions: (1)

the Court lacks jurisdiction to consider the motions by reason of the pendency of McKissick's appeal; (2) the Individual Defendants failed to plead their claim under the SAR and therefore should be barred from raising it now; and (3) the SAR does not create any cause of action for attorney fees in favor of the Individual Defendants. Furthermore, McKissick objects to particular items of fees and expenses claimed by the Individual Defendants. The Court will address each of McKissick's arguments in turn.

## DISCUSSION

**A. Jurisdiction**

This Court has jurisdiction to decide the Individual Defendant's Motions for Attorney Fees. McKissick alleges that this Court is divested of jurisdiction to consider the matter because she filed her Notice of Appeal prior to the Individual Defendants' request for attorney fees. In support of her argument, McKissick cites only a single case, *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982), which states that a notice of appeal divests the district court of jurisdiction over those parts of the case involved in the appeal. *Id*. at 58. While this statement is accurate, it does not lend any support to McKissick's argument. In this case, McKissick's claims against the Individual Defendants were for violations of the Securities and Exchange Act of 1934, fraud, deceit, and negligent misrepresentation. The Court granted summary judgment in favor of the Individual Defendants exclusively on those claims, thus, only those claims can be involved in McKissick's appeal of this Court's Order. The Court has not yet ruled on the issue of the Individual Defendants' request for attorney fees, therefore the Notice of Appeal does not divest the Court of jurisdiction to consider the issue.

**B. Individual Defendants' Failure to Plead Their Attorney Fee Claim**

Next, McKissick argues that the Individual Defendants' failure to assert their claim for attorney fees either in their Motion for Summary Judgment or through a counterclaim bars them from now asserting the claim. McKissick bases this argument on Fed. R. Civ. P. 54(d)(2)(A) and the Advisory Committee Notes to the rule. Rule 54(d)(2)(A) states "[a] claim for attorney's fees and related non-taxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." The corresponding Advisory Note, added as part of the 1993 Amendments to the Rule, states that subsection (d)(2)(A) "does not, however, apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury." McKissick argues that because the Individual Defendants' basis for claiming attorney fees is contractual, Rule 54(d)(2)(A) required Defendants to raise it in the pleadings and prohibits their post-judgment motions.

In *Capital Asset Research Corp., v. Finnegan*, 216 F.3d 1268 (11th Circuit 2000), the Eleventh Circuit rejected an argument nearly identical to the argument advanced by McKissick in this case. The defendants in *Capital Asset* were granted attorney fees based on a prevailing party contract provision after successfully defending against the plaintiff's breach of contract and trade secret claims. *Capital Asset Research Corp.*, 216 F.3d at 1269. The plaintiff appealed the award arguing that the district court lacked jurisdiction to grant attorney fees. Similar to McKissick, the plaintiffs argued that Rule 54(d)(2)(A) required the defendants' claim for attorney fees to be plead and proved as damages at trial, and because defendants did not plead such damages, the district court lacked jurisdiction to entertain the post-judgment motions. *Id.*

The Court in *Capital Asset* rejected the jurisdiction argument stating that "nothing in the language of the Rule itself or in the Advisory Committee notes suggests that the failure to seek attorneys' fees in a pleading is a defect depriving the district court of subject matter jurisdiction." *Id*. at 1270. The court further stated that the Advisory Committee notes only indicate that such damages are "typically" to be claimed in a pleading. *Id*.

The *Capital Asset* Court found additional authority for upholding the district court's award of attorney fees in Rule 54(c). Rule 54(c) states that, other than a default judgment, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." The court also cited several cases supporting its conclusion that Rule 54(c) allows a party to seek attorney fees even when the party failed to raise the issue in its pleadings. *See, e.g.*, *Engel v. Teleprompter Corp.*, 732 F.2d 1238 (5th Cir. 1984); *Accord Klarman v. Santini*, 503 F.2d 29, 36 (2d Cir. 1974).

Based on the language of Rules 54(d)(2)(A) and 54(c) and the persuasive analysis set forth by the Eleventh Circuit in *Capital Asset*, the Court finds that McKissick's argument is without merit. Nothing in the language of Rule 54(d)(2)(A) prohibits a post-judgment request for attorney fees such as the one made by the Individual Defendants in this case. The underlying substantive claims in this case are McKissick's claims for violations of the Securities and Exchange Act, fraud, deceit, and negligent misrepresentation. There were no breach of contract claims alleged by either McKissick or the Individual Defendants, thus, the substantive law did not require attorney fees based on the SAR to be proved at trial as an element of damages.[1] On

---

[1] McKissick argues that even though no breach of contract claims were alleged, Defendants were required to plead breach of contract as a compulsory counterclaim in order to receive attorney fees based on the SAR. This argument was successful in *Caremark Inc., v.*

5

the other hand, Rule 54(c) expressly provides the Individual Defendants with the relief to which they are entitled, even if they did not demand such relief in the pleadings. Although the Individual Defendants did not specifically request attorney fees in their pleadings, the Court notes that in their Motion for Summary Judgment, the Individual Defendants did request that "the Court grant such other and further relief the Court deems appropriate." (Defs.' Mot. for Summ. J., Docket No. 266 at 24.) Regardless of whether this request can be interpreted as a request for attorney fees, the final Judgment entered in favor of Defendants [Docket No. 294] permits the Court to award the Individual Defendants attorney fees if they are otherwise entitled to such an award.

**C. Scope of the SAR**

McKissick also contends that the Individual Defendants are not entitled to attorney fees under the terms of the SAR. The relevant terms of the SAR are not in dispute and are as follows:

> THIS SEPARATION AGREEMENT AND RELEASE (this "Agreement") is entered into between Pamela McKissick ("Employee") and TV Guide Networks, Inc. and all of its affiliated entities (collectively "the Company") . . .
>
> 6. <u>Released Actions/General Releases</u>: Employee . . . hereby irrevocably and unconditionally releases and forever discharges the Company, its divisions, units, subsidiaries, parents, and all other affiliated entities, and each of their current and former employees, officers, directors, representatives, agents, shareholders, attorneys, accountants, partners, insurers, advisors, partnerships, assigns, successors, heirs, predecessors in interest, joint ventures, and affiliated persons (collectively "Released Parties") from any and all liabilities, causes of action, charges, complaints, suits, claims, obligations, costs, losses, damages, injuries, rights, judgments, attorney's fees, expenses . . . and all other legal responsibilities of any form or nature . . . which she has or had or may claim to have by reason of any and all manners from the beginning of time through the effective date . . .

---

*Coram Healthcare Corporation*, 924 F.Supp. 891 (N.D. Ill. East. Div., 1996), however, the argument was expressly rejected by the Eleventh Circuit in *Capital Asset Research Corp., v. Finnegan*, which is discussed in detail above. 216 F.3d at 1271 n.4.

> 17. <u>No Actions</u>.  Employee represents and warrants that she has not filed any complaints or charges or lawsuits against the Company with any governmental agency or any court, and has not assigned any cause of action to any third party, and that she will not file lawsuits against Company for claims arising up to and including the Effective Date at any time hereafter . . . If Employee violates the Agreement by bringing or maintaining any charges, claims, grievances, or lawsuits contrary to this provision, she will pay all costs and expenses of the Company and/or related persons in defending against such charges, claims or actions brought by her or on her behalf, including reasonable attorney's fees, and will be required to refund, at the Company's sole discretion, the value of any amount paid by Company in exchange for this Agreement.

(Separation Agreement and Release, Docket No. 300-2.)

The Court has already determined that McKissick breached the "No Actions" clause of the SAR when she initiated this suit against Gemstar and the Individual Defendants.  Thus, there is no dispute that the remedies provided for in the "No Actions" clause has been triggered.  The only issue remaining is whether the Individual Defendants are "related persons" and, as such, entitled to attorney fees for defending against McKissick's prohibited lawsuit.  McKissick contends that the covenant not to sue does not extend to the Individual Defendants because they are not included in the definition of "Company" or covered by the term "related persons."  According to McKissick, the term "related persons" is not clear, but should logically be construed to include only the affiliated entities included in the definition of "Company."  In response, the Individual Defendants maintain that the phrase "the Company and/or related persons" must include them, otherwise the term "related persons" would be rendered superfluous.   The Court agrees with the Individual Defendants' argument that McKissick's interpretation of the term "related persons" is not reasonable.  In Oklahoma, a contract must be interpreted as a whole "so as to give effect to every part, if reasonably practicable."  Okla. Stat., tit. 15 § 157.   To interpret "related persons" as the affiliated entities already included in the

definition of "Company," as urged by McKissick, would give the two terms the exact same definition, consequently giving no meaning to the term "related persons." This is not a reasonable interpretation that gives effect to every term used in that clause. Instead, the Court finds that the term "related persons" logically includes the Individual Defendants who were former officers of the company against who McKissick expressly relinquished her right to bring an action. The SAR uses the term "related persons" and not, for example, "related entities" or "related organizations." The most logically related "persons" to the Company would be its current and former individual officers, directors, and employees. The Court finds that the Individual Defendants are "related persons" under the terms of the SAR.

Finally, McKissick also argues that the Individual Defendants are not entitled to attorney fees under the SAR because they ended their employment with Gemstar before the SAR was executed and, as a result, are not parties to the contract. This argument also fails because it is clear from the language of the SAR that the Individual Defendants were intended as third-party beneficiaries of the contract. *See Woolard v. JLG Industries, Inc*., 210 F.3d 1158, 1168-69 (10th Cir. 2000) (setting forth the general requirements of third-party beneficiary contracts under Oklahoma law). Through the express designation of former employees, officers, and directors as "Released Parties," the SAR demonstrates the intent of the parties to expressly benefit former employees such as the Individual Defendants. It is not necessary that the Individual Defendants be listed by name or even be aware of the contract at the time it was made in order to be a third-party beneficiary. *Id*. Therefore, the Individual Defendants are entitled to attorney fees under the SAR because they are "related persons" who were required to defend themselves against McKissick's lawsuit which was prohibited by the SAR.

**D. Objections to Specific Items of Attorney Fees**

McKissick makes two specific objections to the amount of fees claimed by Individual Defendants' attorneys. McKissick objects to the duplicate time entries by FKKS which appear on each of the Individual Defendants' separate billing statements. Additionally, McKissick objects to any hourly rates charged by the Individual Defendants' attorneys that exceed $250 per hour, claiming that $250 is the established rate for disputed attorney fee applications in this district.

*1. Duplicate Time Entries*

The supplemental affidavit of Brian E. Maas [Docket No. 325] explains why there appears to be duplicate time entries on FKKS's billing statements for the Individual Defendants. Mr. Maas states that FKKS lawyers evenly divided their time spent on projects that benefitted both of the Individual Defendants. As a result, an equal amount of time was billed to each of the Individual Defendants for the attorneys' work. Mr. Maas further asserts that the aggregate of the time charged to the Individual Defendants accurately reflects the total time spent defending the action. The Court finds that the time billed by FKKS attorneys was reasonable and will not be reduced.

*2. Hourly Rates*

Under Oklahoma law, reasonable attorney fees are to be determined based on the standards within the local legal community. *Taylor v. Chubb Group of Insurance Companies*, 874 P.2d 806, 808 (Okla. 1994). A review of attorney fees awarded in similar cases in this district where the fees were disputed reveals the appropriate hourly rate for highly competent and experienced attorneys to be $250 per hour. *Wormuth v. State Farm Mut. Auto. Ins. Co.*, 2008

WL 2166358, *6 (N.D. Okla. May 21, 2008); *D.H. v. Ponca City Independent School Dist. No. 71*, 2007 WL 26707105, *2-3 (N.D. Okla. Sept. 7, 2007); *Oklahoma Natural Gas Company v. Apache Corp.*, 355 F.Supp.2d 1246, 155-56 (N.D. Okla. 2004 ).  However, previously in this case, McKissick did not object to the award of fees at a rate of $295 per hour by John Dowdell, an attorney for Defendant Gemstar.  (Report and Recommendation, Docket No. 172 at 7, n.5.)  Based on this award, the Individual Defendants argue that Mr. Maas should be awarded the same rate, plus year to year increases, because he is an attorney of comparable skill and experience to Mr. Dowdell.  The Individual Defendants also seek hourly rates above $250 per hour for Ms. Beeber of FKKS and Paula Quillin of FFWF.

      The Court finds that Mr. Maas shall be allowed to charge an hourly rate of $295 per hour with no year to year increase for the years 2007 and 2008.  Considering the hourly rate previously awarded by this district along with the rate previously awarded in this case to Mr. Dowdell, a local attorney, the Court finds that $295 is a reasonable rate for Mr. Maas.  The rates charged by Ms. Beeber and Ms. Quillin shall not exceed $250 per hour.[2]  The Individual Defendants are instructed to submit amended billing statements which shall contain the hourly rates set forth above.

---

[2] The Court notes that the Individual Defendants made no specific arguments in their Reply Brief as to why Ms. Beeber or Ms. Quillin should be allowed to charge more than $250 per hour.

## CONCLUSION

For the foregoing reasons, Defendants Henery C. Yuen and Elsie M. Leung's Motions for Attorney Fees [Docket Nos. 300, 301] are GRANTED, and they are ordered to file amended billing statements with hourly rates consistent with the findings in this Order.

IT IS SO ORDERED.

James H. Payne
United States District Judge
Northern District of Oklahoma